UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S.I.O, a minor, by and through her Guardian ad Litem, EYDIE ORTEGA,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 1:14-cv-1904-EPG<br><br>ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |

**I.   INTRODUCTION**

Eydie Ortega, ("Plaintiff"), brings this action on behalf of her minor daughter, S.I.O, seeking judicial review of a final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Supplemental Security Income benefits ("SSI") under Title XVI of the Social Security Act.  The matter is before the Court on the parties' briefs, which were submitted without oral argument to Honorable Erica P. Grosjean, United States Magistrate Judge.[1]  The Court finds that the Administrative Law Judge ("ALJ") applied the correct legal standards and the decision is supported by substantial evidence in the record.  Accordingly, this Court affirms the agency's determination to deny benefits and denies Plaintiff's appeal.

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 6 and 7).

## II.  BACKGROUND AND PRIOR PROCEEDINGS[2]

Plaintiff filed an application for SSI on March 20, 2011, alleging disability due to attention deficit disorder, oppositional defiant disorder, learning disability not otherwise specified, heart issues, and asthma.[3] AR 21-22, 112; 167-175; 195.  Her application was denied initially on September 6, 2011, and on reconsideration on February 10, 2012.  AR 18; 106-110; 112-116.  A hearing was conducted before ALJ Danny Pittman (the "ALJ") on March 8, 2013.[4] AR 37-87.  On March 27, 2013, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled.  AR 18-30.  Plaintiff filed an appeal of the decision with the Appeals Council which was denied, rendering the ALJ's order the final decision of the Commissioner. AR 1-3.

Plaintiff is challenging this decision on the basis that the ALJ improperly assessed the medical record by failing to accord the physicians' opinions appropriate weight, and by failing to resolve conflicts in the medical opinions.  In opposition, the Defendant argues that the ALJ properly evaluated the medical evidence, and the ALJ's decision is supported by substantial evidence.

## III.  THE CHILDHOOD DISABILITY DETERMINATION PROCESS

The regulations promulgated by the Social Security Administration establish a three-step sequential evaluation procedure for determining whether a child's impairments result in marked and severe functional limitations and is therefore disabled.  20 C.F.R. § 416.924(b)-(d).  The relevant inquiry at step one is whether the child is engaged in substantial gainful activity.  20 C.F.R.§ 416.924(b). If so, there is no disability and the claim is denied. *Id*.

If not, step two requires the fact finder to determine whether the child has a medically severe impairment or combination of impairments.  20 C.F.R. § 416.924(c). Plaintiff bears the burden of demonstrating a severe impairment.  20 C.F.R. § 416.924.  If the impairment is a "slight abnormality or a combination of slight abnormalities that cause no more than a minimal functional limitation," the Commissioner will find that the child does not have a severe

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.
[3] Plaintiff's initial application only listed attention deficit disorder and asthma as a basis for SSI benefits, but the medical record contains information regarding Plaintiff's other impairments, and are addressed in the ALJ's decision.
[4] The Plaintiff was nine years old at the time of the hearing.

impairment, and therefore is not disabled. 20 C.F.R. § 416.924(c).

If the child has a severe impairment, the third and final step assesses whether the severe impairment meets or equals any impairment that is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(d). If such an impairment exists, the Commissioner must find the child disabled. *Id*. If the child's impairment does not meet or medically equal any listing, then the Commissioner must determine if the limitations caused by the impairment functionally equals a listing in the Listing of Impairments. 20 C.F.R. § 416.926a(a). To do so, the Commissioner assesses all of the functional limitations caused by the child's impairment in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for self; and (6) health and physical well-being. 20 C.F.R. § 416.926a(a)-(b). To functionally equal a listing, the impairments must result in marked limitations in two domains of functioning, or an "extreme" limitation in one domain. 20 C.F.R.§ 416.926a(a). A "marked" limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). It is "more than moderate" but "less than extreme." *Id*. A child's "day-to-day functioning may be seriously limited when [his or her] impairment(s) limits only one activity or when the interactive and cumulative effects of [his or her] impairment(s) limit several activities." *Id*. An "extreme" limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). It is the rating given to "the worst limitations." *Id*.

**IV. THE ALJ'S APPLICATION OF THE THREE-STEP PROCESS**

After reviewing all the evidence, the ALJ evaluated Plaintiff using the three-step sequential evaluation process outlined above. The ALJ found that Plaintiff had not engaged in substantial gainful activity after her application date of March 15, 2011. AR 21. He also determined that Plaintiff had severe impairments of attention deficit hyperactivity disorder ("ADHD"), learning disability not otherwise specified, and asthma. However, he found that Plaintiff's alleged heart issues, and oppositional defiant disorder were not severe. AR 21. Finally, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that

met, medically equaled, or functionally equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 21-30.  Specifically, in terms of the six functional equivalence domains, the ALJ found that Plaintiff had: (1) less than marked limitation in acquiring and using information, (2) less than marked limitation in attending and completing tasks, (3) less than marked limitation in interacting and relating with others, (4) no limitation in moving about and manipulating objects, (5) no limitation in the ability to care for herself, and (6) less than marked limitation in health and physical well-being. AR 25-30. Thus, the ALJ concluded that Plaintiff was not disabled as defined by the Act. AR 30.

## V.     STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether:  (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

## VI.    DISCUSSION

### A.    The Relevant Medical Evidence

The entire medical record was reviewed by the Court, however, the following summary is limited to the issues raised in this appeal.

#### 1.    Consultive Examiners

##### a.    *Liz Lawson, School Psychologist*

On May 19, 2011, a school psychologist, Liz Lawson, completed a Multidisciplinary Psycho-Educational Report. AR 414-422. Ms. Lawson reported that Plaintiff had full scale IQ score of 81 and was performing within the low average range of intellectual ability, indicating that Plaintiff's IQ is equal to, or higher than 10% of children her age. AR 248; 417.  Specifically,

the test results suggested that Plaintiff was achieving in the average range of Broad Written Language and Written Expression, however, she was achieving in the low average range in Broad Reading, Oral Language, Broad Math, and Math Calculation skills. AR 249; 252; 418; 421. On the Conners' Teacher Rating scale, Plaintiff scored markedly atypical in inattention, hyperactivity/impulsivity, learning problems/executive functioning, and peer relations; and mildly atypical in aggression. AR 251; 420.

Notwithstanding the above, Ms. Lawson described Plaintiff as a "friendly, talkative first grade student," and found that Plaintiff did not demonstrate a severe discrepancy between intellectual ability and academic achievement, nor did she exhibit a processing deficit. AR 252; 421. Ms. Lawson concluded that Plaintiff did not meet the eligibility criteria of a student with a specific learning disability, or for special education services. AR 252; 421. Ms. Lawson reported that although the Conners' Teacher Rating Scale indicated that Plaintiff struggles in the classroom with attention, during testing, Plaintiff was able to maintain focus for longer periods of time and attend to tasks presented without breaks. AR 252; 421. She also displayed normal strength, vitality, and alertness. AR 421. Ms. Lawson opined that Plaintiff's areas of difficulty could be addressed with services offered within the regular instructional program. AR 252; 421.

### b. *Dr. Mary McDonald, Examining Consulting Psychologist*

On June 15, 2011, a licensed psychologist, Dr. Mary McDonald performed a psychological evaluation at the request of the Commissioner. AR 365-67. On Bender Visual Motor Gestalt testing, Plaintiff scored in the high average range for copying and low average range for recall. AR 367. On the Wechsler Intelligence scale, Plaintiff scored very low for verbal comprehension and had a full scale IQ of 87. On the Vineland Adaptive Behavior scales, Plaintiff's performance was within the range of developmental delay, based on Plaintiff's mother's reports. AR 367.

Given Plaintiff's low verbal score and other testing, Dr. McDonald opined that Plaintiff had a learning disability. AR 367. Dr. McDonald diagnosed Plaintiff with attention deficit hyperactivity disorder, learning disorder not otherwise specified, and asthma. AR 369. Dr. McDonald reported that Plaintiff was, "not in counseling and although her mother listed

numerous behavior problems, on closer inspection, she reported that they really were not an issue because she is not in counseling" AR 369. Dr. McDonald gave a "questionable" prognosis, and as to recommendations, Dr. McDonald stated that Plaintiff presented with deficits in verbal comprehension, social skills, adaptive behavior, attention, concentration, persistence, and pace. AR 369.

### 2. Non-Examining Physicians

#### a. Dr. Aquino-Caro, M.D. and Dr. Ocrant, M.D.

On July 25, 2011, state agency reviewing psychiatrist E. Aquino-Caro, M.D., reviewed the medical evidence and opined that Plaintiff had less than marked limitations in acquiring and using information, attending and completing tasks, and in health and physical well-being; and no limitations in interacting and relating with others, caring for oneself, or moving about and manipulating objects. AR 380. Ian Ocrant, M.D., affirmed Dr. Aquino-Caro's opinion on September 1, 2011. AR 379.

#### b. Dr. Fast, M.D. and Dr. Murillo, M.D.

On February 2, 2012, state agency reviewing physician R. Fast, M.D., reviewed the medical evidence and opined that Plaintiff had less than marked limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, in health and physical well-being, and caring for oneself. AR 409. Dr. Fast noted that Plaintiff was able to complete psychological testing and was cooperative and pleasant AR 409. Psychiatrist E. Murillo, M.D., affirmed Dr. Fast's opinion on February 10, 2012. AR 408.

#### c. Dr. Nancy Winfrey, Ph.D.

Dr. Nancy Winfrey, a state agency psychologist, reviewed Plaintiff's medical record and testified as a medical expert at Plaintiff's hearing AR 41-72.  Dr. Winfrey testified that Plaintiff's diagnoses included ADHD, oppositional defiant disorder ("ODD"), and learning disability not otherwise specified AR 43.

Dr. Winfrey found that Plaintiff had less than marked difficulties in cognitive communicative functioning, her working memory scores were relative low, and her verbal functioning was in the marked range.  Nevertheless, Plaintiff did not qualify for special education.

AR 44-45. Dr. Winfrey found that based on two teacher questionnaires, Plaintiff had less than marked difficulties leaning toward mild in social functioning, noting that Plaintiff's behavior improved with ADHD medication. AR 45. Dr. Winfrey found no problems in Plaintiff's personal functioning. AR 46.

For the category of Plaintiff's concentration, persistence, and pace, Dr. Winfrey found a marked limitation without medications, and a less than a marked limitation while on medications, noting that Plaintiff did well when she was on medications. AR 46. In the domain of acquiring and using information, Dr. Winfrey found a less than a marked limitation, mirroring her analysis of cognitive communicative functioning. AR 46. In the domain of attending and completing tasks, Dr. Winfrey found a marked limitation without medications and a less than marked limitation with medications. AR 46. In the domain of interacting and relating with others, Dr. Winfrey found a less than marked limitation based on the limitations in Plaintiff's social functioning. AR 46-47. In the domain of moving about and manipulating objects, Dr. Winfrey found no limitation. AR 47. In the domain of caring for oneself, Dr. Winfrey found no limitation. AR 47. In the domain of health and physical well-being, Dr. Winfrey did not make a rating. AR 47.

Dr. Winfrey pointed out that the first teacher questionnaire made a distinction between Plaintiff's ability to focus before and after she took medication, and that Plaintiff was able to pay attention in class better while on medication. AR 49-51. When questioned about Plaintiff's difficulty in Fall 2012, after she was on medication for a period of time, Dr. Winfrey noted that Plaintiff's medication was being adjusted during that period. AR 52. Dr. Winfrey also found that the medical evidence supported the first teacher's questionnaire response that Plaintiff improved on medication. AR 64.

As to the second more recent teacher questionnaire, Dr. Winfrey found that overall, based on the higher number of boxes checked indicating "no" or "only [a] slight problem," Plaintiff did not have marked limitations. AR 53; 55-56. Specifically, the doctor noted that Plaintiff's most recent teacher indicated that although Plaintiff had some problems, the teacher took wrote, "[she] otherwise functions very well if she is taking her meds." AR 53; 72; 268. When asked to explain

the discrepancy between the teacher's evaluations that noted improvement when Plaintiff was on her medications, and the psychologist's reports indicating that there were still marked deficiencies even when Plaintiff was on her medications, the doctor noted that the most recent teacher evaluation noted improvement when Plaintiff was on medications, and the medical records also show improvement with medications. AR 53-57; 65.

Regarding any diagnosis of ODD, Dr. Winfrey noted that there was not prior treatment for ODD. Additionally, there was no indication of a pattern of significant problems at school, or at home, prior to a single diagnosis in February 2012. AR 57-58, 59.

Finally, Dr. Winfrey objected to the findings on the Vineland Adaptive Behavior Scales portion of Dr. McDonald's testing (AR 367, 368) indicating that Plaintiff had low scores in adaptive functioning. The doctor opined that scores would likely indicate that Plaintiff was mentally retarded, or had a pervasive developmental disorder, however, the record did not support either finding. AR 61-62, 64. Dr. Winfrey found these results less reliable based on the fact that they were based on Ms. Ortega's statements and not on actual observations of Plaintiff. AR 62-63; 368.

### 3. Teachers' Questionnaires

On May 7, 2011, Plaintiff's first grade teacher completed a questionnaire. AR 218-225. She described Salina's reading and math skills as "far below grade level." AR 218. She considered Salina to have "a very serious problem" in the areas of reading and comprehending written material, comprehending and doing math problems, learning new material, and recalling and applying previously learned material. AR 218.

The teacher also noted that Plaintiff "has difficulty staying focused on the learning," and rated "a very serious problem" with focusing long enough to finish an assignment or task, refocusing when necessary, carrying out multiple step instructions, working without distracting herself or others and following rules. AR 220-21. However, she also indicated that Plaintiff had been taking medication to help with the focusing issues for about a month and that the "medicine has helped lots." AR 224. The teacher indicated that since starting the medication, Plaintiff's behavior problems have almost completely gone away, and that Plaintiff's ability to focus had

significantly improved. AR 224.

On February 8, 2013, Plaintiff's third grade teacher also completed a teacher questionnaire, approximately six months into the school year. AR 265-72. She described Plaintiff as "easily distracted when not taking her medication," and that she was currently receiving instruction at her actual grade level in reading, math, and written language. AR 265-266. However, her school performance was in the lower one-third of the class. AR 265-266. The teacher further explained that Plaintiff, "has difficulty staying on task for extended periods and if there are multiple directions given." Otherwise, Plaintiff functions very well if she is taking her medications. AR 267. Furthermore, Plaintiff can refocus if given directions again, "but not usually independently." AR 267. The teacher also noted that Plaintiff has an easier time attending to tasks with medication, but can function without it. AR 271. The teacher also noted that Plaintiff had no problems interacting and relating with others, moving about and manipulating objects, or caring for herself. AR 268-270.

### 4. Treatment Notes

On February 28, 2011, Plaintiff visited Huiying Gu, M.D., at the Family Healthcare Network for her complaints of decreased concentrating ability; her hyperactive, socially inappropriate, and impulsive behavior; and being easily distracted and disruptive in class. Dr. Gu noted that Plaintiff was alert and oriented to time, place, and person, and he prescribed Adderral for ADHD. AR 353-354. On a follow-up visit on March 16, 2011, Plaintiff reported that she was doing well on Adderall medication until after school. AR 349. On March 24, 2011, Dr. Gu reported an overall normal physical examination, diagnosed ADHD, and a learning difficulty. AR 345-346. On a follow-up visit on April 16, 2011, Plaintiff reported no decrease in concentrating ability, no hyperactive behavior, no socially inappropriate behavior, and no impulsive behavior; she was not disruptive or easily distracted in class; and that she was doing well on Adderall. AR 343.

On September 8, 2011, Wilson Chen, M.D., at Family Healthcare Network reported that Plaintiff was doing well at home, had good school performance, had no behavioral problems, was not easily distracted or disruptive in class, was sleeping well, but had a poor appetite. AR 399.

9

Dr. Chen continued Plaintiff's Adderall prescription. *Id.* On October 27, 2011, Dr. Gu reported that Plaintiff was well-appearing, alert, and active, had a normal physical examination, and had normal affect; he changed Plaintiff's medication to Strattera, another medication for ADHD. AR 393-394.

On December 16, 2011, Dr. Gu reported that Plaintiff was well-appearing, alert, and active, had normal physical examination, and had normal affect. AR 386-387. He changed Plaintiff's medication to Vyvanse (another ADHD medication), and reported that Plaintiff was doing well with no complaints from her school. AR 385-386. On January 24, 2012, Dr. Gu reported that Plaintiff missed her appointment with her psychiatrist and was having problems with appetite and aggressive behavior. AR 384. Dr. Gu continued Plaintiff's Vyvanse medication and ordered Plaintiff to follow-up in one month or sooner. AR 384-385.

On February 8, 2012, Edgar Castillo, M.D., at Kaweah Delta Health Care Clinics diagnosed Plaintiff with ADHD. AR 386. He reported that Plaintiff was restless and fidgety, had hyperactive psychomotor activity, and a short and distractible attention span. AR 426. However, she also had good hygiene, cooperative attitude, full range of affect, happy mood, normal spontaneous speech, intact and relevant thought process, good abstraction, good judgment, and average intelligence. AR 426. Dr. Castillo continued Plaintiff's Vyvanse medication prescription. AR 426.

On March 7, 2012, Plaintiff was doing well and did not have side effects from the medication. AR 424. Dr. Castillo reported that Plaintiff was alert, cooperative, less hyperactive, and less disruptive; had no motor tics; and reported that she was doing well in school. AR 424.

On September 26, 2012, Plaintiff reported to Dr. Gu that she was doing "OK" on her current medications with no side effects. AR 437. On November 27, 2012, Plaintiff's mother reported that she did not want Plaintiff to see any other doctors or psychiatrists because she thought they were not helping. AR 434. She complained that Plaintiff was struggling with learning and was having daily screaming episodes. *Id.* Dr. Gu adjusted Plaintiff's medication. AR 434-435. On January 12, 2013, Dr. Gu reported some improvement though Plaintiff was hyperactive at times. AR 432.

### B. The ALJ's Assessment of the Medical Evidence is Proper.

Plaintiff argues that the ALJ improperly evaluated the medical evidence regarding Plaintiff's psychological impairment. She contends that the ALJ erred by assigning great weight to non-examining psychologist, Dr. Nancy Winfrey's opinion, but attributed less weight to the opinions of consultative examiners, Ms. Lawson, the school psychologist, and Dr. Mary McDonald. As a result, the ALJ did not consider all of Plaintiff's limitations when evaluating the six functional equivalence domains.

#### *1. Legal Standards for Medical Opinions*

The weight given to medical opinions depends in part on whether they are offered by treating, examining, or non-examining (reviewing) professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. *Lester*, 81 F.3d at 830. While a treating professional's opinion is generally accorded superior weight, if it is contradicted by an examining professional's opinion (when supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995), citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152 (9th Cir. 2001), except that the ALJ need not give it any weight if it is conclusory and supported by minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990);

*Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

The opinion of a non-examining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Such independent reasons may include laboratory test results or contrary reports from examining physicians, and plaintiff's testimony when it conflicts with the treating physician's opinion. *Lester,* 81 F.3d at 831*,* citing *Magallanes*, 881 F.2d at 751–55.

### *1. The ALJ's Findings*

The ALJ's opinion outlines a detailed summary of the relevant medical evidence. AR 22-25. When evaluating the doctors' opinion evidence, the ALJ states as follows:

> A Multidisciplinary Pyschoeducational Report dated May 19, 2011, completed by Liz Lawson, School Psychologist, notes her full scale IQ to be 81. The claimant displayed a relative strength in writing. Results for the Woodcok Johnson suggested that she was achieving within the average range in Broad Written Language, as well as Written Expression, [and] in the low average range in Broad Reading, Oral Language, Broad Math and Math Calculation Skills. Conners' Rating Scale results indicated that the claimant is markedly inattentive or easily distracted, with a short attention span.  It also indicated mild aggression at school, marked difficulties with peer relations, and poor social skills.
>
> Nevertheless, Ms. Lawson described the claimant as a "friendly, talkative first grade student." She did not demonstrate a severe discrepancy between intellectual ability and academic achievement, nor did she exhibit a processing deficit. Therefore, she did not meet the eligibility criteria as a student with a Specific Learning Disability. During testing, she was able to maintain focus for long periods of time and attend to tasks presented without breaks, she displayed normal strength, vitality, and alertness. Significant weight is afforded to this opinion and it is consistent with the overall medical evidence of record.

AR 23-24 (citiations omitted).

> Mary K. McDonald, Ph.D., consultatively evaluated the claimant on June 15, 2011. Dr. McDonald noted that the claimant was not in counseling, although her mother listed numerous behavior problems and that "on close inspection, she reported that they really were not an issue because she is not in counseling." The claimant did not present with a significant behavior problem, and appeared to have an undiagnosed and unaddressed learning disability. ADHD, learning disorder, not otherwise specified was diagnosed. [*sic*]. Significant weight is afforded to this assessment, as it is consistent with the other medical evidence of record.

AR 24.

> Medical Expert and Clinical Psychologist Nancy Lynn Winfrey, reviewed the evidence of record and testified at the hearing. Dr. Winfrey notes the claimant does not meet or equal the listings. In fact, she does not qualify for special education. She noted that two different teacher's questionnaires generally support her conclusions that the claimant functions well on medications. The claimant is not currently in any therapy, and there was nothing in the file to support any consistently marked limitations in any area of functioning. In fact, Dr. Winfrey indicated that the record reflects improvement with medication therapy. Great weight is afforded to this opinion. Dr. Winfrey had the opportunity to review the evidence of record, and her conclusions are consistent with the evidence.

AR 24-25.

The ALJ also gave significant weight to the opinions of non-examining physicians Drs. Aquino-Cara, Ocrant, Fast, and Murillo. AR 24.

### *2. Analysis*

As previously noted, Plaintiff contends that the ALJ's evaluation of the medical evidence was improper. Specifically, Plaintiff asserts that the ALJ failed to assign marked limitations in any of the six functional categories, however, Ms. Lawson opined that Plaintiff scored markedly atypical in inattention; hyperactivity/impulsivity; learning problems/executive functioning; and peer relations on the Conner's Rating Scale. AR 251; 442. Mrs. Lawson also found that Plaintiff tested in the low to average range on the Wechsler's Intelligence Scale for Children, and obtained scores equal to, or higher than 10% of children her age. AR 248; 417.

Similarly, Dr. McDonald also opined that Plaintiff had deficits in verbal comprehension, social skills, and adaptive behavior, attention, concentration, persistence, and pace. AR 369. Plaintiff's performance on the Wechsler's Intelligence Scale for Children demonstrated an

"undiagnosed and unaddressed learning disability." AR 369. Plaintiff contends that the ALJ gave Ms. Lawson and Dr. McDonald's opinions significant weight, but only credited part of the opinions, did not mention these limitations when discussing the functional limitations, and did not resolve the conflict of their opinions with Dr. Whitney's findings. (Doc. 17, pgs. 6-8 and Doc. 25, pgs. 3-7).

As a preliminary matter, the Court is not persuaded by Plaintiff's argument that the ALJ did not consider the limitations set forth in Liz Lawson's and Dr. McDonald's reports. Although the ALJ does not specifically list the marked limitations of "atypical in inattention; hyperactivity/impulsivity; learning problems/executive functioning; and peer relations" outlined in Ms. Lawson's report, he clearly considered them when summarizing her decision. AR 23. In particular, the ALJ explained that Dr. Lawson's report reveals that Plaintiff is markedly inattentive or easily distracted, with a short attention span, has marked difficulties with peer relations and poor social skills, a full IQ of 81, and low average range in Broad Reading, Oral Language, Broad Math and Math Calculations Skills. He similarly recognized the limitations addressed in Dr. McDonald's report regarding Plaintiff's attention span and learning problems by recognizing that Plaintiff has a diagnosis of ADHD, and had an undiagnosed learning problem.[5] AR 24.

Although Plaintiff correctly notes that the ALJ gave these opinions significant weight, he clearly gave Dr. Whitney's opinion greater weight. AR 25. In doing so, the ALJ noted that Dr. Whitney concluded there was nothing in the file to support any consistent marked limitation in any area of functioning. AR 25. The ALJ indicated that the basis for the doctor's decision was that Plaintiff improved while on medication, and that Dr. Whitney reached this conclusion after considering the medical evidence including two different teachers' evaluations. AR 25. The ALJ also noted Dr. Whitney relied on the fact that Plaintiff did not qualify for special education services, and was not currently in therapy, which were findings Liz Lawson and Dr. McDonald

---

[5] Although the ALJ does not specifically address Dr. McDonald's evaluation of Plaintiff's concentration, persistence, and pace, Dr. Whitney, whose decision the ALJ gave great weight to, did address these areas in her testimony and found marked limitations without medication, and less than marked limitations while Plaintiff was on medication. AR 46.

made in their evaluations. AR 25; 252; 369; 421. As a result, these are specific and legitimate reasons for giving Dr. Whitney's opinion greater weight. This is especially true since Dr. Whitney's evaluation was most recent, and she was the only evaluator to have access to all of the teachers' evaluations, as well as other doctors' reports in the file. *Thomas*, 278 F.3d at 957 (Opinions of non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record); *See also*, 20 C.F.R. § 416.927(c)(3); 20 C.F.R. § 416.927(c)(4) (The more a medical source presents medical signs to support his or her opinion, or the more consistent his opinion is with the overall record, the more weight the ALJ can give that opinion).

Moreover, Dr. Winfrey also testified and was extensively cross-examined at the hearing regarding her conclusion that two different teachers' questionnaires generally supported the finding that Plaintiff's condition improved on medication. AR 25, 45-59. This conclusion is supported by Plaintiff's teacher who in May 2011, reported that Plaintiff was doing much better since her medications started, that her behavior problems had almost completely disappeared, and that her ability to focus had improved. AR 24, 224. In addition, in February 2013, almost two years later, Plaintiff's teacher reported that although Plaintiff was in the bottom third of her class, she was functioning at grade level. AR 265-266. Although Plaintiff was, "easily distracted when not taking her medications," and "has difficulty staying on task for extended periods and if there are multiple directions given," she "functions very well if she is taking her medications," and will refocus if directions are given. AR 24-25, 266, 267-268. The teacher also noted that Plaintiff "has an easier time attending to tasks with medication, but can function without it." AR 24-25, 271. Moreover, Ms. Wilson indicated "no problems" in Plaintiff's ability to interact and relate with others, move about and manipulate objects, or take care of herself. AR 24, 268-270.

Finally, the medical records also indicate that Plaintiff improved while on medications for her ADHD. Drs. Gu, Chen and Castillo, Plaintiff's treating physicians, noted overall improvement in Plaintiff's ADHD with medication. AR 343; 385-386; 399; 424; 432; 437. Although Plaintiff disagrees with the ALJ's conclusions regarding this evidence, she fails to establish any legal error with the ALJ's analysis of the medical source opinions. Instead, she

merely sets forth her interpretation of the same evidence the ALJ analyzed, and asks the court to choose her interpretation over the ALJ's analysis. While the Court is sympathetic to Plaintiff's case, it remains the law that where more than one rational interpretation of the evidence exists, the ALJ's conclusion must be upheld. *Thomas*, 278 F.3d at 954; *Magallanes*, 881 F.2d at 750.

In light of the above, the Court is similarly not persuaded by Plaintiff's argument that the ALJ did not thoroughly explain his reasoning for finding less than marked limitations in the areas of acquiring and using information, attending and completing tasks, and interacting and relating with others. The Court has reviewed the ALJ's reasoning in each area and finds he applied the proper legal standards and his conclusions are based on substantial evidence. AR 25-27. To the extent that the ALJ's reasoning with finding no marked limitation in the areas of attending and completing tasks is weak, the ALJ clearly relied on Dr. Whitney's conclusions that the medical record did not support any marked limitations in any area, and that Plaintiff's ADHD improved with medications elsewhere in the opinion. AR 25-27.

## VII.  CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff, Eydie Ortega, bringing this action on behalf of her minor daughter, S.I.O.

IT IS SO ORDERED.

Dated:   **March 10, 2016**            /s/ Erica P. Grosjean
                                        UNITED STATES MAGISTRATE JUDGE